IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL L. WARNER,                              6:12-CV-00761-BR

        Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration[1],

        Defendant.


ALAN STUART GRAF, P.C.
316 Second Road
Summertown, TN 38483
(931) 964-3123

        Attorney for Plaintiff

S. AMANDA MARSHALL

---

[1]    Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013.  Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION AND ORDER

United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2733

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Michael L. Warner seeks judicial review of a final
decision of the Commissioner of the Social Security Admini-
stration (SSA) in which she denied Plaintiff's application for
Disability Insurance Benefits (DIB) under Title II of the Social
Security Act.  This Court has jurisdiction to review the
Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    Following a review of the record, the Court **AFFIRMS** the
decision of the Commissioner.



## ADMINISTRATIVE HISTORY

    Plaintiff filed applications for Supplemental Security
Income (SSI) and DIB on October 20, 2008, and alleged a

2 - OPINION AND ORDER

disability onset date of January 10, 1999.  Tr. 141-50.[2]

Plaintiff's claim for SSI benefits was denied on October 27,

2008, due to excessive income ($942.00 per month).  Tr. 81-88.

That determination was not appealed.

Plaintiff's application for DIB was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

hearing on November 2, 2010.  Tr. 31-78.  At the hearing

Plaintiff was represented by an attorney.  Plaintiff and a

vocational expert (VE) testified.

The ALJ issued a decision on November 17, 2010, in which he

found Plaintiff was not disabled because he could perform his

past relevant work as a security guard and protective officer as

he had performed the jobs.  Tr. 20.  That decision became the

final decision of the Commissioner on February 23, 2012, when the

Appeals Council denied Plaintiff's request for review.  Tr. 1-4.

On April 30, 2012, Plaintiff filed a Complaint in this Court

seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on August 3, 1950, and was 60 years old

at the time of the November 2010 hearing.  Tr. 141.  Plaintiff

---

[2]  Citations to the official transcript of record filed by
the Commissioner on January 30, 2012, are referred to as "Tr."

has a high-school education.  Tr. 38, 189.  Plaintiff has past
relevant work experience as a protective officer, a finish
carpenter, and a security guard.  Tr. 251.

Plaintiff alleges disability due to degenerative neck
disease, arthritis, shoulder problems, carpal tunnel, bone spurs,
lower-back problems, and acid reflux.  Tr. 183.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate his
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,*

682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is
"relevant evidence that a reasonable mind might accept as
adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11
(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690
(9th Cir. 2009)).  It is more than a mere scintilla [of evidence]
but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d
at 690).

     The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


### DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

     At Step One the claimant is not disabled if the Commissioner

determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete

incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since his January 1, 2007, amended onset date.  Tr. 15.

7 - OPINION AND ORDER

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, minimal degenerative disc disease of the lumbar spine, remote history of mild chondromalacia of the right knee, and remote history of right-shoulder rotator-cuff repair. *Id.*

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff has the RFC to perform light work except reaching overhead bilaterally, and he can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. Tr. 16.

At Step Four the ALJ concluded Plaintiff is able to perform his past relevant work as a protective officer as actually performed and a security guard as actually and generally performed. Tr. 20.

## DISCUSSION

Plaintiff contends the ALJ erred (1) when he found Plaintiff less than fully credible and (2) when he failed to further develop the record.

## I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.

1995). *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008). The ALJ's findings, however, must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001). Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Reddick,* 157 F.3d at 722. The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208. General findings (*e.g.,* "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

When deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08.  The *Cotton* test imposes only
> two requirements on the claimant:(l) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282 (emphasis in original).  *See also*

*Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th

Cir. 2008).

The ALJ found Plaintiff not credible to the extent that his

allegations exceed the ALJ's evaluation of Plaintiff's RFC.  Tr.

20.  The ALJ found the objective evidence does not support the

degree of limitation alleged, and Plaintiff's daily activities

imply more functional capacity than Plaintiff described.  Tr. 19.

The ALJ noted:  "It appears that the claimant has a tendency to

overstate his problems."  Tr. 19.  A tendency to exaggerate and

to make inconsistent statements are valid considerations when

determining credibility.  *Tonapetyan v. Halter,* 242 F.3d 1144,

1148 (9th Cir. 2001).

**A.  Neck Pain**

The ALJ noted Plaintiff "repeatedly referred to having a

broken neck[,] . . . but the evidence shows only a minimal

compression fracture at T12." *Id.* In December 2008 DeWayde

Perry, M.D., noted:

> The claimant also suffered a fracture of his
> neck in a motor vehicle collision between 1978
> and 1980, but he was apparently not diagnosed
> until 15 years later. He was diagnosed with
> degenerative disk disease of the cervical spine
> and at that time was noted to have a fracture
> of the C-spine. He says the neck pain is con-
> stant and it produces tensing in his muscles of
> the arms and increased pains. He says that rest
> and sleep will decrease his pain as well as ob-
> taining some relief from over-the-counter medi-
> cations.

Tr. 283.

Dr. Perry noted Plaintiff has pain and a reduced range of

motion in his neck. Tr. 285.

In December 2008 x-rays of the lumbosacral spine showed

"[n]o compression fracture, disc space narrowing or pars defect

is seen. Minor anterior hypertrophic spurring at L2-3 and L3-4

is present. Minimal old compression deformity of 12 is seen."

Tr. 291.

In August 2010 David Zollinger, M.D., examined Plaintiff to

establish care. Dr. Zollinger noted Plaintiff "gets a

degenerative disk disease in his cervical spine after a fractured

neck which flares after prolonged driving."

Tr. 321.

On this record the Court finds the ALJ validly considered

the conflicting evidence of Plaintiff's neck pain complaints when

he assessed Plaintiff's credibility.

11 - OPINION AND ORDER

**B.  Lower-Back Pain**

The ALJ noted Plaintiff "complains of significant right leg
pain caused by sciatica; however, imaging studies clearly showed
that the condition of his lower back is within normal limits for
an individual his age."  Tr. 19.

Plaintiff testified he injured his lower back in 2003 and
had not sought or received treatment because he did not have any
insurance.  Tr. 50-51.  He reclines when sitting to keep pressure
off of his lower back and believes he can sit only three hours in
an eight-hour period.  Tr. 47, 60.

In December 2008 x-rays of the lumbosacral spine and right
hip were "within normal limits for age."  Tr. 291.  In August
2010 Plaintiff reported to Dr. Zollinger that he "has had right
hip pain with some sciatica-type symptoms which took three months
to recover from about a year ago.  Now it bothers him when he
does heavy lifting."  Tr. 321.

On this record the Court finds the ALJ properly considered
the conflicting evidence of Plaintiff's back pain when he
assessed Plaintiff's credibility.

**C.  Vision**

The ALJ noted Plaintiff "informed the providers at
Volunteers in Medicine that he was losing his vision, but testing
revealed that he had 20/30 visual acuity on the left and 20/20
visual acuity on the right."  Tr. 19.  Richard Barnhart, M.D.,

examined Plaintiff in September 2010.  Tr. 319.  Dr. Barnhart noted Plaintiff "says his vision is bad.  He wants an eye check. When I offered just reading glasses he said that his eyes are different and he wants a more extensive checkup."  Tr. 319.  The ALJ accurately noted the vision test results.

At the vision screening on October 1, 2010, Plaintiff reported "more difficulty reading/seeing things up close than from a distance."  Tr. 318.

On this record the Court finds the ALJ properly considered the evidence of Plaintiff's vision complaints when he assessed Plaintiff's credibility.

**D.  Gastroesophageal Reflux Disease (GERD)**

The ALJ noted Plaintiff "claimed that his GERD was severe enough to suggest pre-Barrett's syndrome, but prior medical records revealed no evidence of any abnormalities other than a history of mild gastritis."  Tr. 19.

Steven N. Butt, M.D., diagnosed Plaintiff with Barrett's Esophagus and Gastroesophageal Reflux in December 2000.  Tr. 282.

In May 2004 Dr. Butt recorded Plaintiff came in for a comprehensive examination with concerns about skin lesions, Reflux, and Barrett's Syndrome.  Tr. 279.  Dr. Butt noted Plaintiff "is convinced that this is a life-threatening problem." Tr. 279.

In August 2010 Plaintiff reported to Dr. Zollinger that he

"has been advised to get every-two-year EGDs to rule out
Barrett's because of some scarring changes seen on a past scope."
Tr. 321.  A September 2010 note indicates an upper endoscopy
showed mild chronic gastritis but no evidence of Barrett's
Syndrome or pre-Barrett's Syndrome.  Tr. 319.

On this record the Court finds the ALJ properly considered
the contradictory evidence of the severity of Plaintiff's GERD
when he assessed Plaintiff's credibility.

**E.  Daily Activities**

In March 2009 Plaintiff saw Dr. Butt for complaints of pain
in both shoulders.  Tr. 269.  Plaintiff said he had been
wrestling with his teenage son "approximately a year ago" when he
felt pain in his left shoulder.  Tr. 269.

The ALJ found Plaintiff's allegations of disabling pain
inconsistent with his activities "such as wrestling with his son,
which should have been extremely painful if not impossible for
him to perform if his subjective complaints are accurate."  Tr.
19.

The Commissioner points out that this wrestling match
occurred six months before Plaintiff filed his application for
disability benefits, but after his amended alleged disability
onset date of January 1, 2007.  This fact was a valid
consideration by the ALJ when he assessed Plaintiff's
credibility.

14 - OPINION AND ORDER

**F.  Objective Medical Evidence**

An examining physician's opinion that a claimant's ability to work is not objectively limited undermines the claimant's credibility.  *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004).  Dr. Perry examined Plaintiff in December 2008.  Tr. 283-87.  Dr. Perry found Plaintiff has a reduced range of motion and pain in his neck, normal range of motion with some pain in both shoulders, and reduced deep tendon reflexes in his knees.  Tr. 285-86.  He also found Plaintiff has normal range of motion in his back, normal range of motion in his knees, full motor strength in his extremities, and normal results in straight-leg-raising tests.  Thus, the Court finds on this record that the objective medical evidence supports the ALJ's determination that Plaintiff's subjective complaints are not entirely credible.

In summary, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff less than fully credible as to his symptoms.

**II.  Development of the Record**

Plaintiff argues the ALJ should have ordered a second consultative examination to further evaluate Plaintiff's physical impairments.  Plaintiff contends the ALJ relied on outdated medical records and imaging studies unsuitable for determining

15 - OPINION AND ORDER

the nature of any soft-tissue injuries.

The ALJ has an independent duty to fully and fairly develop
the record and to ensure that the Plaintiff's interests are
considered. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.
2001). The ALJ's duty to develop the record is triggered when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation. *McLeod v. Astrue,* 640 F.3d 881, 885
(9th Cir. 2011).

The Court finds the record before the ALJ was not ambiguous.
In December 2008, almost two years after Plaintiff's amended
onset date, Plaintiff was sent to
Dr. Perry for a consultative examination as noted. Dr. Perry
formed an opinion about Plaintiff's functional limitations
without indicating that he needed further clinical data.
Tr. 287. Although Plaintiff points out that Dr. Perry did
not have the benefit of reviewing the x-rays taken after the
examination, Plaintiff's argument fails because those x-rays do
not indicate greater limitations than those identified by Dr.
Perry.

In addition, Plaintiff received medical care in 2010,
and those medical records were part of the record before the ALJ.
Tr. 19, 315-30.

On this record, the Court finds Plaintiff's argument that
the ALJ relied on outdated medical records is not accurate.

**<u>CONCLUSION</u>**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 31st day of May, 2013.


                                        /s/ Anna J. Brown

                                        _____
                                        ANNA J. BROWN
                                        United States District Judge

17 - OPINION AND ORDER